**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

| | | |
|---|---|---|
| **CMH HOMES, INC. and VANDERBILT MORTGATGE AND FINANCE, INC.** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** 3:15-cv-13355 |
| **vs.** | ) | |
| **RICKY A. PRESTON and NARY J. PRESTON,** | ) | |
| **Defendant.** | ) | |

**PETITION FOR ORDER TO COMPEL ARBITRATION**

Pursuant to 9 U.S.C. § 4, CMH Homes, Inc. ("CMH") and Vanderbilt Mortgage and Finance, Inc. ("VMF") petition this Court for an order compelling Ricky A. Preston and Nary J. Preston ("Defendants") to arbitrate various claims on an individual basis that they have asserted against CMH and VMF that relate to or arise from their purchase of a manufactured home ("Home") and the financing of that purchase. When Defendants purchased the Home, they signed a Manufactured Home Retail Installment Contract and Disclosure Statement ("Installment Contract," attached hereto as Exhibit 1) that included an Agreement to Arbitrate (hereinafter "the Arbitration Agreement"). The broad terms of the Arbitration Agreement cover the claims that Defendants have sought and are seeking to assert in a state court civil action. CMH and VMF further request attorney fees and an order enjoining Defendants from litigating their claims in violation of the Arbitration Agreement.

# I. RELEVANT FACTS

1. Defendants purchased the Home from CMH Homes, Inc. d/b/a/ Oakwood Homes Barboursville on or about February 28, 2011. (Installment Contract at 10)

2. The total sales price for the Home under the Installment Contract was $117,852.00, including a down payment of $50,000.00. Defendants agreed under the Installment Contract to make two hundred forty (240) monthly payments of $724.64 beginning April 1, 2011. (Installment Contract at 2, 4)

3. CMH is defined as the "Seller" under the Installment Contract. (Installment Contract at 10) Defendants are defined as the "Buyer" under the Installment Contract. (Installment Contract at 1)

4. Under the terms of the Installment Contract, Defendants granted to CMH a purchase money security interest in the Home. (Installment Contract at 5)

5. Pursuant to its terms, CMH assigned the Installment Contract and its rights thereunder, to Vanderbilt Mortgage and Finance, Inc. ("VMF") upon execution.[1]

***Defendants Agree to Arbitrate Their Claims***

6. The Installment Contract contains a broad Arbitration Agreement, which is set forth on its own separate, dedicated page and under a heading that reads in bold capital letters: "**ARBITRATION**". In relevant part, the Arbitration Agreement states:

> Buyer and Seller (sometimes called the "Parties") agree to mandatory, binding arbitration ("Arbitration") of all disputes, claims, controversies, grievances, causes of action, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law

---

[1] The Installment Contract lists VMF as "ASSIGNEE" at the top of its first page and, on its seventh page, expressly states that "Seller may assign this Contract to any person or entity." In addition, next to the Defendants' signatures on its last page, the Installment Contract states: "SELLER'S AGREEMENT AND ASSIGNMENT: Seller hereby agrees to this Contract. Additionally, Seller hereby assigns this Contract together with Seller's rights, title and interests in the Collateral and all real property (if any) securing this Contract, to Vanderbilt Mortgage and Finance, Inc. (the "Assignee") . . . ." (Installment Contract at p. 10)

> claims, and any other matter in question ("Claims") **arising from or relating to** this [Installment Contract], any products/goods, services, insurance, or real property (including improvements to the real property) sold or financed under this [Installment Contract], any events leading up to this [Installment Contract], the collection and servicing of this [Installment Contract], and the interpretation, scope, validity or enforceability of this [Installment Contract] (with the exception of this agreement to arbitrate, the "Arbitration Agreement").

(Installment Contract at 8) (emphasis added)

7. VMF perfected its security interest in the Home by notation of lien on the Certificate of Title. (*See* Certificate of Title, a copy of which is attached hereto as Exhibit 2)

***Defendants Try to Litigate Their Claims by Asserting Initial Defect Counterclaims***

8. Defendants failed to make monthly payments owed to VMF under the terms of the Installment Contract, and the loan is past due from January 1, 2015.

9. On May 26, 2015, VMF filed a lawsuit in the Circuit Court of Wayne County, West Virginia seeking to enforce its security interest in the Home (hereinafter the "State Court Action," Complaint attached hereto as Exhibit 3).

10. On June 29, 2015, Defendants answered the Complaint pro se. In their Answer, Defendants averred that the manufactured home was not installed properly and had multiple defects. (Answer, at ¶ 4, attached hereto as Exhibit 4)

11. Treating the averments of Defendants in their Answer as counterclaims (hereinafter the "Initial Defect Counterclaims"), VMF filed an Answer to Counterclaims on July 10, 2015. (Answer to Counterclaims, attached hereto as Exhibit 5) In its Answer, VMF asserted multiple affirmative defenses, including that Plaintiffs' counterclaims were barred for lack of subject matter jurisdiction because, pursuant to *State ex rel. Skyline Corp. v. Sweeney*, 754 S.E.2d 723 (W.Va. 2014), Defendants had failed to comply with West Virginia Code § 21-9-11a by first filing an administrative complaint with the West Virginia Division of Labor, Manufactured Housing

Construction and Safety Standards Board (hereinafter the "Board") and waiting the statutorily required ninety (90) days before filing in a civil action a claim "arising out of the manufacture, acquisition, sale or installation" of a manufactured home.

12. On or about July 17, 2015, Defendants retained counsel. Shortly thereafter, Defendants' counsel and representatives of VMF began informal settlement negotiations which remain ongoing and during which VMF requested on multiple occasions that Defendants submit their claims to arbitration, consistent with the Arbitration Agreement.

13. On July 22, 2015, Defendants filed a complaint regarding the alleged defects in the Home with the Board. (*See* Board Complaint, attached hereto as Exhibit 6) The complaint only named CMH as a respondent. To date, the Board has still not served the Board Complaint on CMH, however.

14. As they continued to try to reach a negotiated settlement, Defendants and VMF filed a Joint Motion for Status/Scheduling Conference on or about August 15, 2015, in which they reserved, so as not to waive, all rights to which they may be entitled, including the right to arbitration. (*See* Joint Motion for Status/Scheduling Conference, attached hereto as Exhibit 7)

***Defendants Seek Leave to Litigate Additional Counterclaims in the State Court Action Rather Than Arbitrate as Agreed***

15. On September 3, 2015, Defendants filed a Motion to Amend Answer ("Motion to Amend," attached hereto as Exhibit 8), which remains pending at the time of this filing. The proposed Amended Answer and Counterclaim submitted with the Motion to Amend seeks to bring CMH into the State Court Action and assert claims against both CMH and VMF, both as Counterclaim Defendants.

16. In the proposed Amended Answer and Counterclaim, Defendants allege that they paid $117,852.00 for the Home, putting down a $50,000 cash down payment and financing a

principal balance of $72,924.23. (Amended Answer at ¶¶ 17–20) According to the Defendants, the retail value of the Home at the time of sale was $79,792.81. (Amended Answer at ¶ 19)

17. Defendants are attempting to allege counterclaims against VMF and CMH. Defendants seek relief under theories of unconscionable inducement, illegal transaction in violation of West Virginia Code § 31-17-2, unconscionable arbitration clause, contractual defense of fraud, fraud, breach of warranty, abusive debt collection, and failure to accept payments. (Amended Answer at pp. 8–17)

18. On the unconscionable inducement claim, Defendants requested the following relief:

(a) A declaration that Vanderbilt's loan was induced by unconscionable conduct and/or contained unconscionable terms, and that it is thus unenforceable, pursuant to W.Va. Code § 46A-2-121(1);[2]

(b) Actual damages equivalent to the amount paid plus amount claimed due under the loan, and incidental and consequential damages;

a. Appropriate civil penalties and reasonable attorney fees and the cost of this litigation pursuant to W.Va. Code § 46A-5-101(1) & 106;

(c) Such other relief as the Court may deem equitable and just.

(Amended Answer at pp.11-12.)

19. On the illegal transaction claim, Defendants requested the following relief:

[2] Chapter 46A of the West Virginia Code, under which Defendants assert their statutory claims, is also referred to as the West Virginia Consumer Credit and Protection Act. *See* W. Va. Code § 46A-1-101.

(a) The transaction be declared void pursuant to W.Va. Code § 31-17-17;

(b) Actual damages equivalent to amounts paid;

(c) Attorney fees and costs; and

(d) Such other relief as the Court deems equitable and just.

(Amended Answer at p. 12)

20. On the fraud claim, Defendants requested the following relief:

(a) Actual and punitive damages;

(b) Equitable relief, including a declaration that the transaction is unenforceable fraudulently induced;

(c) Reasonable attorney's fees and the cost of this litigation; and

(d) Such other relief as the Court may deem equitable and just.

(Amended Answer at p. 15)

21. On the abusive debt collection and failure to accept payments claims, Defendants requested the following relief:

(a) Actual damages

(b) Civil penalties of $4,840 for each violation pursuant to W.Va. Code sections 46A-5-101(1) & 106;

(c) Reasonable attorneys fees and costs of this litigation;

(d) Such other relief as the Court deems equitable and just.

(Amended Answer at p. 17.)

22. On this same day, VMF filed a Motion for Judgment on the Pleadings in the State Court Action, which is currently pending. (*See* Motion for Judgment on the Pleadings, attached

hereto as Exhibit 9) The motion requests that that State court immediately dismiss the Initial Defect Counterclaims because they (1) were asserted against the wrong party and (2) the state court lacks subject matter jurisdiction to hear the claims because Defendants did not first go through the administrative process in compliance with West Virginia Code § 21-9-11a. Due to the lack of subject matter jurisdiction, VMF moved the Court to dismiss the counterclaim immediately without taking any other action, including consideration of the Defendants' Motion for Leave to Amend.

23. Defendants have failed to arbitrate the Initial Defect Counterclaims or the new counterclaims they seek leave to assert and instead seek to resolve these claims in court by filing their initial counterclaim and a Motion for Leave to Amend Answer and Counterclaims. (Affidavit of George Gunnell ["Gunell Aff."] at ¶ 7) (Affidavit of Marc Maxwell ["Maxwell Aff."] at ¶ 6) (attached hereto as Exhibits 10 & 11, respectively)

## II. ARGUMENT AND AUTHORITIES

### A. This Court Has Subject Matter Jurisdiction.

24. Section 4 of the Federal Arbitration Act (FAA) provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate . . . may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed." 9 U.S.C. § 4.

25. This court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). This jurisdictional grant provides this court jurisdiction over this petition.

**1. The Parties Are Completely Diverse.**

26. CMH is a Tennessee corporation with its principal place of business in Tennessee. (Gunnell Aff. at ¶ 3)

27. VMF is a Tennessee corporation with its principal place of business in Tennessee. (Maxwell Aff. at ¶ 3)

28. Defendants are citizens of West Virginia.

**2. More Than $75,000 Is in Controversy.**

29. It is legally possible that more than $75,000 is in controversy. "In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." *JHT Tax, Inc. v. Frashier*, 624 F. 3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.'" *Id.* (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 289). "In considering a suit to compel arbitration, the question of jurisdictional amount may be determined by reference to the possible award resulting from the requested arbitration." *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F. 2d 301, 304 (4th Cir. 1992); *see also Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) ("[I]t is well-settled that the amount in controversy in a petition to compel arbitration is the maximum value the arbitration could award to one side or the other in the underlying dispute.").

30. Defendants' proposed Amended Answer and Counterclaims requests "[a]ctual damages equivalent to the amount paid plus amount claimed due, and incidental and consequential damages." (Amended Answer at 11) This request for relief alone places more than $75,000 in controversy. The total sales price under the Installment Contract was $117,852.00. "When a party

seeks cancellation of a contract, it is the entire price of the contract that is in controversy." *Brown v. CMH Mfg, Inc.*, Civ. No. 2:13-31404, 2014 WL 4298332, at *3 (S.D. W. Va. Aug. 29, 2014). "When the contract challenged is an installment contract, it is well-established that the value considered is the total value of the contract, not just installments allegedly due on the initial filing of the suit." *Womack v. Wells Fargo Bank, N.A.*, Civ. Action No. 1:11-cv-104, 2011 U.S. Dist. LEXIS 152639, at *7 (N.D. W. Va. Aug. 24, 2011) (internal citations omitted); *see generally Dixon v. Edwards*, 290 F. 3d 699, 710 (4th Cir. 2002) ("[T]he test for determining the amount in controversy in a diversity proceeding is the pecuniary result to either party which [a] judgment would produce." (internal quotation marks and citation omitted; alteration in original)).

31. Defendants' claim for compensatory and punitive damages related to their alleged agreement to pay $38,059.19 more for the Home than they assert it was actually worth also places more than $75,000 in controversy. It is legally possible for the Defendants to be awarded punitive damages of several times his compensatory damages. *See, e.g.*, *Boyd v. Goffoli*, 608 S.E. 2d 169 (W. Va. 2004) (affirming award of punitive damages for fraud that was 8.4 times compensatory damages). A compensatory damage award of $38,059.19 on the fraud count, plus 3.1 times that amount in punitive damages ($117,983.49), would total $156,042.68.

32. Defendants proposed Amended Answer and Counterclaims also requests attorney fees on seven of their eight claims, and these attorney fees count toward the amount in controversy. *See Mo. State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933); *McGraw v. Discovery Fin. Servs., Inc.*, Civ. No. 2:05-0215, 2005 WL 1785259 at *6 (S.D. W.Va. July 26, 2005) ("[T]he right to fees created by W. Va. Code § 46A-5-104 may be considered for purposes of meeting the amount in controversy threshold under 28 U.S.C. § 1332(a).").

33. Defendants' proposed Amended Answer and Counterclaims also requests additional relief that counts toward the amount in controversy, including statutory penalties, costs, and appropriate equitable relief. *See JTH Tax, Inc. v. Frashier*, 624 F. 3d 635, 639 (4th Cir. 2010) (value of equitable relief included in the amount in controversy); *Countryman v. NCO Fin. Sys., Inc*., Civ. No. 5:09-cv-00288, 2009 WL 1506720, at *2-3 (S.D. W.Va. May 27, 2009) (statutory penalties under W. Va. Code § 46A-5-101(1) are included in the amount in controversy); *Griffin v. Holmes*, 843 F. Supp. 81, 85 (E.D.N.C. 1993) (costs that are an element of a claim for damages are included in the amount in controversy).

34. *Brown v. CMH Mfg., Inc*., Civ. No. 2:13-31404, 2014 WL 4298332, at *3 (S.D. W. Va. Aug. 29, 2014) recently held that more than $75,000 was in controversy when a purchaser of a manufactured home sought to cancel a contract to purchase a home for $57,597, alleged a violation of the West Virginia Consumer Credit and Protection Act, sought attorney fees under West Virginia Code § 46A-6-104, and sought punitive damages.

**B. Defendants are Subject to Personal Jurisdiction in West Virginia.**

35. Defendants are citizens and residents of West Virginia and are thus subject to personal jurisdiction in this Court.

**C. Venue Is Proper in this District and Division.**

36. Venue is proper in the Huntington Division. Defendants are residents of Wayne County, West Virginia, and the Home was purchased in Barboursville, Cabell County, West Virginia. *See* 28 U.S.C. § 1391(b)(1)-(2). Wayne County and Cabell County are located in the Southern District of West Virginia. *See* 28 U.S.C. § 129(b).

37. Wayne County and Cabell County are located in the Huntington Division of the Southern District of West Virginia. *See* S.D. W. Va. L.R. Civ. P. 77.2.

**D. The Arbitration Agreements Are Governed by the Federal Arbitration Act.**

38. CMH and VMF move to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.

39. The FAA establishes a "federal policy favoring arbitration" and applies to any written agreement to arbitrate in a contract "involving commerce." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also* 9 U.S.C. § 2.

40. The FAA "leaves no place for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24–25.

41. "In the Fourth Circuit, a litigant can compel arbitration under the [FAA] if he can 'demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F. 2d 99, 102 (4th Cir. 1991)). All of the requirements for enforcing an agreement to arbitrate under the FAA are satisfied here.

**1. A Dispute Exists between the Parties.**

42. As explained above, Defendants claims against CMH and VMF and seek damages, attorney fees, equitable relief, and invalidation of a loan.

43. Section 4 of the FAA, 9 U.S.C. § 4, allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to "petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or admiralty of the subject matter of a suit" for an order compelling arbitration. It is irrelevant whether a suit had been filed seeking to litigate a dispute that is subject to an arbitration agreement. *See Vaden v. Discover Bank*, 556 U.S. 49, 63 n.13 (2009) ("The parties' underlying dispute may or may not be the subject of pending litigation. This explains § 4's use of the conditional 'would' and the indefinite '*a* suit.' A party often files a § 4 petition to compel arbitration precisely because it does not want to bring suit and litigate in court." (emphasis in original)).

**2. A Written Arbitration Agreement Exists That Covers the Dispute.**

44. The Arbitration Agreement in the Installment Contract is written.

45. Defendants' claims all fall within the broad scope of the Arbitration Agreement, which applies to disputes "related to" or "arising from or related to" the purchase or financing of the Home. Defendants' claims seek invalidation of the loan they were required to repay under the Installment Contract, damages for losses allegedly suffered when they purchased the Home, and civil penalties and damages related to conduct allegedly committed in servicing the Installment Contract. These claims all relate to or arise from the Installment Contract or the purchase and financing of the Home. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (noting that language requiring arbitration of disputes arising out of or related to an agreement is "capable of an expansive reach"). As a signatory to the Installment Contract, CMH is entitled to enforce the Arbitration Agreement with Defendants. Likewise, VMF is entitled contractually, and under a theory of equitable estoppel, to enforce the Arbitration Agreement against Defendants as an assignee of the Installment Contract. *See*

*Erichsen v. RBC Capital Mkts., LLC*, 883 F. Supp. 2d 562, 571 (E.D.N.C. 2012) ("The Fourth Circuit has announced that equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the agreement in asserting its claims against the nonsignatory." (citing *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F. 3d 623, 626–27 (4th Cir. 2006))).

**3. The Arbitration Agreement Evidences a Transaction Involving Interstate Commerce.**

46. The Arbitration Agreement that Defendants signed evidences transactions involving interstate commerce. The Arbitration Agreement involves the purchase in West Virginia of a manufactured home that was manufactured outside of West Virginia (Gunnell Aff. at ¶ 6). The purchase was financed by VMF, (Maxwell Aff. at ¶ 5), a Tennessee corporation. The Arbitration Agreement in the Installment Contract notes that "[Defendants] agree that the [Home] contains parts manufactured outside the state where the home is sold and delivered; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of America and involve and affect interstate commerce." (Installment Contract at 8) Defendants also purchased the Home from CMH, a Tennessee corporation (Gunnell Aff. at ¶ 3) that conducts business throughout the United States, conducts its business with funds that come from banking institutions located in multiple states, and employs a number of employees who travel across state lines from time to time in conducting business for CMH. (Gunnell Aff. at ¶ 4) *See, e.g.*, *Stevens v. Phillips*, 852 So. 2d 123, 132 (Ala. 2002) (arbitration agreement was involved in interstate commerce when it concerned a manufactured home produced with parts made outside the forum state and the purchase of the home was financed by an out of state company); *Vanderbilt Mortg. & Fin., Inc. v. Dennis*, No. 2002-CA-000979-MR, 2004 WL 690463, at *2 (Ky. App. Apr. 2, 2004) (arbitration agreement was involved in interstate commerce when it

concerned a manufactured home that was produced outside of the forum state and the plaintiffs, who were forum residents, financed the purchase of the home through Vanderbilt Mortgage and Finance, a Tennessee corporation); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) (enforcing arbitration agreement in a manufactured home financing contract)*; Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995) (explaining that the FAA reaches to the full extent of the Commerce Clause).

**4. Defendants Have Failed, Neglected, or Refused to Arbitrate Their Dispute.**

47. Defendants, by refusing direct requests to arbitrate and then trying to litigate, rather than arbitrate, their claims against VMF and CMH by asserting the Initial Defect Counterclaims and filing their Motion to Amend, have "fail[ed], neglect[ed], or refus[ed]" to arbitrate their dispute with VMF and CMH. *Adkins*, 303 F. 3d at 500–01.

**5. Courts Have Compelled Arbitration in Similar Situations.**

48. The Arbitration Agreement Defendants signed is valid and enforceable. *See Nichols v. Springleaf Home Equity, Inc*., Civ. No. 3:11-0535, 2012 WL 777289, at *5 (S.D. W. Va. Mar. 8, 2012) (enforcing arbitration agreement in home loan documents).

49. A federal court in this district recently interpreted arbitration agreements similar to the arbitration agreement at issue here and granted a motion to compel arbitration of claims brought against CMH. *See Brown v. CMH Mfg., Inc*., Civ. No. 2:13-31404, 2014 WL 4298332, at *1 (S.D. W. Va. Aug. 29, 2014). The court in *Brown* held that CMH could seek to compel arbitration of the claims asserted against it by purchaser of a manufactured home. *See id*. at *5. The court in *Brown* also rejected various arguments the home purchased had raised in an effort to prevent enforcement of the arbitration agreement. *See id*. at *4–*11.

**E. CMH and VMF are Entitled to an Order Enjoining Defendants from Litigating Their Claims.**

50. As explained above, Defendants have an arbitrable dispute with CMH and VMF, and CMH and VMF are entitled to an order compelling Defendants to arbitrate their claims against them.

51. This Court may enjoin Defendants from litigating their claims against CMH and VMF in state or federal court. *See, e.g.*, *Pine Ridge Coal Co. v. Loftis*, 271 F. Supp. 2d 905, 909 (S.D. W. Va. 2003).

52. Injunctive relief is appropriate based on considerations of the hardship that CMH and VMF would face if injunctive relief were denied and the lack of prejudice that Defendants would suffer if injunctive relief were granted. If injunctive relief were denied and Defendants litigated their claims, then CMH and VMF would both have to incur additional expense defending Defendants' claims. The grant of injunctive relief would not prejudice Defendants. The Initial Defect Counterclaims are invalid and ripe for dismissal, as the State Court lacks jurisdiction to hear those claims and VMF has moved for dismissal in the State Court Action. Defendants would be permitted to resolve the counterclaims against CMH and VMF set forth in the proposed Amended Answer and Counterclaim in arbitration. Defendants also agreed to arbitrate the counterclaims that they assert against CMH and VMF and have no right to litigate those counterclaims in court.

53. CMH and VMF will suffer irreparable harm if Defendants are not enjoined from litigating their claims against CMH and VMF and, in turn, CMH and VMF are denied a right for which they bargained. *See GMRI, Inc. v. Garrett*, Civ. No. 3:14-0866, 2014 WL 1351126, at *4

(S.D. W. Va. Apr. 4, 2014) (granting injunctive relief and holding that denial of the benefits of an arbitration agreement is irreparable harm).

54. Legal remedies are inadequate for the same reasons that CMH and VMF could suffer irreparable harm if injunctive relief is denied. *See United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 11 (1974) ("[I]nadequcy of available remedies goes only to the existence of irreparable injury.").

55. Public interest would not be disserved by enjoining Defendants from litigating their claims against CMH and VMF. Federal policy strongly favors enforcement of arbitration agreements. *See* 9 U.S.C. § 1, *et seq*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting that the Federal Arbitration Act embodies "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"); *GMRI, Inc.*, 2014 WL 1351126 at *5 (granting preliminary injunction to prevent litigation of arbitrable claims).

56. The litigation of arbitrable claims also would unnecessarily consume judicial resources.

**F. CMH Requests Attorney Fees.**

57. Defendants have ignored their obligation to arbitrate this dispute with CMH and VMF.

58. This Court has inherent power to award attorney fees when a party unreasonably resists arbitration. *See, e.g., F.D.I.C. v. Ernst & Young, LLP*, 374 F.3d 579, 584 (7th Cir. 2004) ("[T]he district court has ample authority to award attorneys' fees against parties that make unjustified efforts to escape commitments to arbitrate."); *Amaprop, Ltd. v. Indiabulls Fin. Servs., Ltd.*, No. 10 Civ. 1853, 2011 WL 1002439, at *3–*4 (S.D.N.Y. March 16, 2011) (collecting cases).

59. With Defendants having executed the Arbitration Agreement and filing a Joint Motion with VMF in which arbitration rights were raised so as not to be waived, Defendants and their counsel are well aware of the obligation to arbitrate, yet have chosen to ignore this obligation and try to pursue their claims in court.

60. CMH and VMF are entitled to recover from Defendants reasonable attorney fees that they incur in enforcing the Arbitration Agreements that cover Defendants' claims.

## III. RELIEF REQUESTED

CMH and VMF respectfully request that this Court issue an order compelling Defendants to submit to arbitration on an individual basis, in accordance with the Arbitration Agreement they signed, regarding all of their disputes, claims, controversies, grievances, causes of action they have against CMH and VMF, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, and, where applicable, administrative law claims, and any other matter in question ("Claims") arising from or relating to his purchase and financing of the Home, including the Retailer Closing Agreement, the Retail Installment Contract and/or Purchase Agreement; any products/goods, services, insurance, or real property (including improvements to the real property) sold or financed under the Retailer Closing Agreement, the Retail Installment Contract and/or Purchase Agreement; any events leading up to the Retailer Closing Agreement, the Retail Installment Contract and/or Purchase Agreement; the collection and servicing of the Retailer Closing Agreement, the Retail Installment Contract and/or Purchase Agreement; and the interpretation, scope, validity or enforceability of the Retailer Closing Agreement, the Retail Installment Contract and/or Purchase Agreement (with the exception of the agreement to arbitrate). The order should thus compel arbitration of Defendants' claims for unconscionable inducement, illegal transaction in violation of West Virginia Code § 31-17-2, unconscionable arbitration clause,

contractual defense of fraud, fraud, breach of warranty, abusive debt collection, and failure to accept payments in their proposed Amended Answer and Counterclaim. Consistent with the Arbitration Agreement, this order would not permit arbitration of any claims brought on behalf of a class.

CMH and VMF further requests an order enjoining Defendants from litigating in state or federal court any dispute subject to the Arbitration Agreement.

CMH and VMF further requests reasonable attorney fees incurred in forcing Defendants to arbitrate their claims.

Respectfully submitted,

**CMH HOMES, INC. and VANDERBILT MORTGAGE AND FINANCE, INC.**

By counsel,

*/s/Joseph M. Ward*

Joseph M. Ward (WV Bar 9733)
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, West Virginia 25301
(304) 346-7000
jmw@goodwingoodwin.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**CMH HOMES, INC. and**
**VANDERBILT MORTGATGE**
**AND FINANCE, INC.**

**Plaintiff,**

**vs.** **CIVIL ACTION NO.** 3:15-cv-13355

**RICKY A. PRESTON and**
**NARY J. PRESTON,**

**Defendant.**

**CERTIFICATE OF SERVICE**

I, Joseph M. Ward, hereby certify that I have served a true and correct copy of the foregoing **Petition for Order to Compel Arbitration** on this 22nd day of September, 2015, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Sarah K. Brown, Esq.
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, WV 25301
*Counsel for Defendant*

/s/ *Joseph M. Ward*
Joseph M. Ward (WV Bar #9733)